1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8

| | |
|---|---|
| 9  PUNAOFO TSUGITO TILEI, | CASE NO. 1:10-cv-00069-LJO-SKO PC |
| 10          Plaintiff, | ORDER DISMISSING COMPLAINT, WITH LEAVE TO FILE AMENDED COMPLAINT |
| 11    v. | WITHIN 30 DAYS |
| 12  W.J. MCGUINNESS, et al., | (Doc. 1) |
| 13          Defendants. | |

14

15    Plaintiff Punaofo Tsugito Tilei ("Plaintiff") is a state prisoner proceeding pro se and in forma

16  pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff is in the custody of the

17  California Department of Corrections and Rehabilitation ("CDCR") and is currently incarcerated at

18  Salinas Valley State Prison.  However, the events described in Plaintiff's complaint occurred while

19  Plaintiff was incarcerated at the California State Prison in Corcoran, California ("CSP-Corcoran").

20  Plaintiff is suing under Section 1983 for the violation of his rights under the Eighth Amendment.

21  Plaintiff names William J. McGuinness (chief medical officer), Jeffrey Wang (chief medical officer),

22  T. Hasadsri (health care manager), Joseph Obaiza (health care manager), Julian Kim (physician),

23  Jeffrey Neubarth (physician), N. Loadholt (physician or nurse), P. Rouch (physician or nurse), Lisa

24  Salinas (health care appeals coordinator), and Does 1-20 as defendants.  For the reasons set forth

25  below, the Court finds that Plaintiff's complaint fails to state any cognizable claims under Section

26  1983.  Plaintiff's complaint will be dismissed, with leave to file an amended complaint that cures

27  the deficiencies identified in this order.

28

## I.   Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

## II.   Background

Plaintiff claims that he suffers from several health problems, such as "nerve damage, disk damage, spondylotic stenosis of the entire spine and myeloradiculopathy." (Compl. 7, ECF No. 1.) Plaintiff claims that Defendants acted with deliberate indifference toward his medical problems.

2

1    On November 27, 2007, Plaintiff was scheduled for "urgent cervical spine surgery," but
2  Defendants Loadholt, Hasadsri, and McGuinness "interfered and extremely and woefully delayed
3  Plaintiff[sic] immediate adequate medical treatment." (Compl. 10, ECF No. 1.)  Plaintiff went on
4  a hunger strike to obtain medical treatment.

5    Plaintiff waited four months to receive surgery.  On March 13, 2008, Plaintiff was
6  transported to UC Davis for his surgery.  While waiting for his surgery, one of the doctors, Dr.
7  Babbit, informed Plaintiff that serious and severe problems were discovered in Plaintiff's neck.
8  Plaintiff was told that the problems would result in irreparable harm, including paralysis from his
9  neck to his toes.  Plaintiff complains that Defendants Loadholt, Hasadsri, and McGuinness
10 "completely failed and refused to adequately diagnose and treat [Plaintiff] for more than five years
11 despite Plaintiff's persistent complaints about the myriad of symptoms he was experiencing."
12 (Compl. 11, ECF No. 1.)  Babbit told Plaintiff that the newly discovered problems would alter
13 Plaintiff's treatment and Plaintiff received "major posterior approach surgery to Plaintiff's cervical
14 spine" instead of "the anterior approach surgery that was planned." (Compl. 11-12, ECF No. 1.)

15   On March 18, 2008, Plaintiff was still suffering from severe pain after the surgery.  Plaintiff
16 complains that he was forcefully removed from the hospital and taken back to prison despite
17 informing officials that he did not want to leave the hospital.  Plaintiff was told that he would be
18 taken to the Acute Care Hospital ("ACH") in CSP-Corcoran to receive physical therapy and other
19 necessary medical care.  However, Plaintiff was not placed in the ACH when he returned to CSP-
20 Corcoran.  Plaintiff was placed in the "security housing unit" and "was completely denied medical
21 care and brushed off and derisively dismissed by both CDCR custody and medical staff." (Compl.
22 11-12, ECF No. 1.)  When Plaintiff asked for medical help, he was ignored.  Plaintiff submitted
23 health care request forms on March 26, 2008, March 29, 2008, April 2, 2008, and April 7, 2008, but
24 Defendants ignored those requests.

25   Plaintiff did not see a physician for three weeks.  On April 8, 2008, Plaintiff was seen by
26 Defendant Loadholt who told Plaintiff that he would not receive any medical care because his
27 medical records were not available.  Plaintiff complained that he was suffering from a great deal of
28 pain and begged for some sort of treatment, but was ignored.

On April 15, 2008, Plaintiff was taken to the ACH for a post-op appointment. Plaintiff spoke with Dr. Babbit via a video conference. Babbit told Plaintiff that Defendants Loadholt, Hasadsri, and McGuinness failed and refused to forward Plaintiff's medical records to Babbit. Plaintiff was scheduled for another appointment and told Plaintiff to tell the prison physicians to forward the medical files to Babbit before the next appointment.

On April 18, 2008, Plaintiff saw Defendant Loadholt who again told Plaintiff that he would not receive treatment because his medical records were not available. Plaintiff complained that he should not be denied medical care because his medical records were missing. Loadholt responded by saying that "its[sic] not my problem" and told Plaintiff that if he wanted proper medical care, he should not come to prison. (Compl. 15, ECF No. 1.)

Plaintiff continued to file requests for medical treatment. On May 20, 2008, Plaintiff was seen by Defendant Kim. Plaintiff told Kim that he was still suffering severe pain. Kim told Plaintiff that there was nothing he could do because Plaintiff's medical records were not available. When Plaintiff complained about his missing medical records, Kim told Plaintiff that it was not his problem and dismissed Plaintiff from the clinic.

On May 27, 2008, Plaintiff attended another video conference with Dr. Babbit. Plaintiff told Babbit about his symptoms and his issues with the prison physicians. Babbit told Plaintiff that there was nothing he could do because Defendants Loadholt, Kim, Hasadsri, and McGuinness had failed and refused to forward Plaintiff's medical records to Babbit. Babbit discussed additional surgery options with Plaintiff and ordered an urgent "CT-Myegram" procedure for Plaintiff.

On June 23, 2008, Plaintiff saw Defendant Kim who again told Plaintiff that his medical records were not available. On August 25, 2008, Plaintiff saw Defendant Kim again. Kim told Plaintiff that he was faking his symptoms and there was nothing that could be done. Plaintiff was also told that his medical records were still not available. Plaintiff attempted to ask Kim about the CT-Myegram that was performed on August 4, 2008 and attempted to complain about the missing medical records but Kim abruptly dismissed Plaintiff from the clinic.

4

On November 18, 2008, Plaintiff saw Kim who again told Plaintiff that there was nothing he could do because the pain was all in Plaintiff's head. Plaintiff was told that his medical records were still unavailable.

On November 25, 2008, Plaintiff was taken to the ACH where he was scheduled to have another video conference with Dr. Babbit. When Plaintiff arrived, he was forced to see a different neurosurgeon at UC-Davis. The neurosurgeon was dismissive of Plaintiff's complaints and Plaintiff asked about Dr. Babbit. Plaintiff was told that prison officials were no longer referring prisoners to Dr. Babbit because "Dr. Babbit is always giving prisoners what they ask for." (Compl. 21.)

On December 4, 2008, Plaintiff was seen by Defendant Neubarth. Neubarth told Plaintiff that his complaints were all in his head and that Plaintiff should request to see a psychiatrist.

On January 18, 2009, Plaintiff was found unresponsive and unconscious in his cell after he attempted to commit suicide because he could no longer tolerate the pain associated with his medical conditions. Plaintiff made numerous complaints about his pain but "Defendants Loadholt, Kim, Neubarth, Hasadsri and McGuinness continued to force Plaintiff to submit to said pain." (Compl. 8, ECF No. 1.)

Plaintiff was transferred to Catholic Mercy Hospital in Bakersfield, California for treatment after his suicide attempt. While at the hospital, Plaintiff told one of the physicians there, Dr. Yokohama, about his excruciating pain. Plaintiff told Dr. Yokohama that his pain worsened after he received surgery on his cervical spine on March 13, 2008. The surgery was supposed to relieve Plaintiff's neck pain, but instead caused Plaintiff's condition to worsen. Plaintiff also told Dr. Yokohama that he was supposed to receive further post-op exams, but "Defendants[had] been systematically preventing Plaintiff from receiving said treatment." (Compl. 10, ECF No. 1.)

Yokohama referred Plaintiff to Dr. Rashidi at Mercy Hospital. Plaintiff saw Rashidi and received an independent examination. Plaintiff alleges that Rashidi "discovered" the injuries from which Plaintiff was suffering and gave Plaintiff the option to choose which surgery he wanted performed first. Plaintiff chose to receive surgery to his cervical spine first. The next day, the cervical spine surgery was performed. Rashidi informed Plaintiff that his injury was more severe than expected and told Plaintiff that Rashidi would see him again within two weeks.

On February 2, 2009, Plaintiff was discharged and taken back to CSP-Corcoran where he was housed in the ACH.  Plaintiff complains that he did not receive physical therapy or a referral to a pain specialist.  Plaintiff was released from the ACH on February 11, 2009.

Plaintiff did not see a physician until March 5, 2009.  Plaintiff was seen by family nurse practitioner, Bun Doc, who told Plaintiff that his medical records were unavailable.  Plaintiff was removed from the clinic without treatment.

On March 3, 2009, Plaintiff was escorted to the ACH where he was scheduled to have a video conference with Dr. Rashidi.  Instead, Plaintiff was seen by a different doctor.  The new doctor made an appointment for Plaintiff to be seen by Dr. Rashidi.

On March 12, 2009, Plaintiff was seen by family nurse practitioner Dahn.  Plaintiff was again told that his records were unavailable and did not receive treatment.

Plaintiff alleges that the second surgery on his cervical spine did not improve his neck pain or improve his medical symptoms.  Plaintiff claims that he continues to suffer from a serious medical condition.

On March 26, 2009, Plaintiff was seen by Defendant Neubarth.  Plaintiff was told that his medical records were still unavailable and was dismissed from the clinic.  Neubarth also ordered a small increase in the dosage of one of Plaintiff's medications and ordered an MRI "only for Plaintiff's cervical spine."  (Compl. 33, ECF No. 1.)

On April 28, 2009, Plaintiff was seen by Defendant Rouch who told Plaintiff that she had read Plaintiff's health care appeal and he had been seen by a physician one month ago.  Rouch concluded that Plaintiff's problems were already addressed and that Plaintiff "did not need to keep 'whining.'"  (Compl. 33, ECF No. 1.)  Rouch told Plaintiff that all he does is "'piss people off' and Plaintiff will never get anything accomplished that way."  (Compl. 34, ECF No. 1.)

On May 28, 2009, Plaintiff was transported to a post-op appointment with Dr. Rashidi.  Plaintiff complains that Defendants Rouch, Neubarth, Obaiza, and Wang "woefully delayed" the appointment.  (Compl. 34-35, ECF No. 1.)  Rashidi told Plaintiff that prison officials had failed to bring Plaintiff's medical records with them.  Rashidi told Plaintiff that he only had Plaintiff's MRI images and scheduled Plaintiff to be seen in three months to discuss surgery options to stabilize

1    Plaintiff's neck.  Rashidi also made orders for Plaintiff to see a pain specialist, to receive medication,

2    and to be placed in a single cell because any trauma could lead to paralysis or death.

3        On May 29, 2009, Plaintiff was seen by Defendant Neubarth.  Plaintiff told Neubarth about

4    Dr. Rashidi's orders.  Plaintiff also handed Neubarth a letter and asked Neubarth to address all of

5    Plaintiff's medical symptoms.  Neubarth told Plaintiff that he would not review the symptoms and

6    reiterated his opinion that Plaintiff was faking his symptoms.  Neubarth told Plaintiff that if he

7    wanted the type of medical treatment provided to people outside of prison, he should not be in

8    prison. Neubarth also refused to renew Plaintiff's medical chrono for single cell status.  Plaintiff and

9    Neubarth then had a verbal argument where Plaintiff attempted to induce Neubarth into admitting

10   that he was aware of Plaintiff's medical issues was liable for them.  Neubarth responded by

11   derisively challenging Plaintiff to sue him.  Neubarth then discarded various documents that Plaintiff

12   handed him.

13       On June 22, 2009, Plaintiff was seen by Neubarth who again told Plaintiff that his medical

14   problems were in his head and advised Plaintiff to receive mental treatment.  Neubarth told Plaintiff

15   that he did not care about Dr. Rashidi's recommendations because Dr. Rashidi does not dictate the

16   course of treatment that Plaintiff receives.

17       On August 6, 2009, Plaintiff was seen by family nurse practitioner McCloskey.  McCloskey

18   told Plaintiff that prison officials were recommending that Plaintiff be transferred to another prison.

19   Plaintiff claims that he was being transferred because of his numerous complaints and lawsuits

20   against prison officials.

21       Plaintiff claims that Defendants Salinas and Obaiza retaliated against Plaintiff for repeatedly

22   complaining about his medical treatment by "playing silly games with Plaintiff's CDC-602's and

23   hindering his good faith efforts to properly advance his CDC-602's and properly exhaust his

24   administrative remedies."  (Compl. 46, ECF No. 1.)

25       Plaintiff was transferred to Salinas Valley State Prison on August 17, 2009.

26       Plaintiff sets forth his claims in three separate causes of action.  Plaintiff claims that his

27   Eighth Amendment rights were violated by Defendants' deliberate indifference toward Plaintiff's

28   serious medical needs.  Plaintiff also sues Defendants under state law causes of action for the

7

violation California Government Code § 845.6 and for the intentional infliction of emotional distress.

**III.   Discussion**

    **A.   Eighth Amendment Claims**

Plaintiff claims that Defendants violated Plaintiff's Eighth Amendment rights through their deliberate indifference toward Plaintiff's serious medical needs. The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)). A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious," and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

The objective requirement that the deprivation be "sufficiently serious" is met where the prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities." Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The subjective requirement that the prison official has a "sufficiently culpable state of mind" is met where the prison official acts with "deliberate indifference" to inmate health or safety. Id. (quoting Wilson, 501 U.S. at 302-303). A prison official acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health or safety." Id. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

"[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle, 429 U.S. at 105. In order to state an Eighth Amendment claim based on deficient medical treatment, a plaintiff must show: (1) a serious medical need; and (2) a deliberately indifferent response by the defendant. Conn v. City of Reno, 572 F.3d 1047, 1055 (9th Cir. 2009) (quoting Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)). A serious medical need is shown by alleging that the failure to treat the plaintiff's condition could result in further significant injury, or

8

the unnecessary and wanton infliction of pain.  Id.  A deliberately indifferent response by the defendant is shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference.  Id.  In order to constitute deliberate indifference, there must be an objective risk of harm and the defendant must have subjective awareness of that harm.  Id.

However, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Isolated occurrences of neglect do not constitute deliberate indifference to serious medical needs.  See Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992); O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir. 1990).

### 1.   Claims Against McGuinness, Wang, Hasadsri, and Obaiza

Plaintiff claims that Defendants McGuinness, Wang, Hasadsri, and Obaiza acted with deliberate indifference by delaying Plaintiff's medical treatment.  Plaintiff's factual allegations are too vague to support a cognizable claim against McGuinness, Wang, Hasadsri, or Obaiza.  Plaintiff vaguely alleges that they delayed Plaintiff's medical treatment but fails to describe how they delayed his treatment.  Plaintiff fails to identify any specific action taken by McGuinness, Wang, Hasadsri, or Obaiza.  Further, Plaintiff fails to support his conclusion that their actions were done with deliberate indifference.  Plaintiff does not allege what or how they knew about Plaintiff's condition, or how they knew that their actions would place Plaintiff at risk.

Plaintiff also alleges that McGuinness, Wang, Hasadsri, and Obaiza failed to forward Plaintiff's medical records to doctors outside the prison.  Plaintiff again fails to provide any factual details for his allegations.  It is unclear how they are liable for the failure to forward Plaintiff's medical records to his outside doctors.  Plaintiff provides no factual allegations that support the conclusion that their failure to forward the records was done with deliberate indifference.  Plaintiff has not alleged any facts that plausibly support the conclusion that they were aware that their failure to act would put Plaintiff's health at risk.  Plaintiff has not alleged how these Defendants were aware

9

that Plaintiff's records needed to be sent to the outside doctors and there is no suggestion that these Defendants were the prison officials directly responsible for personally forwarding Plaintiff's records to his outside doctors.  Plaintiff fails to state any claims against Defendants McGuinness, Wang, Hasadsri, or Obaiza.

## 2.   **Claims Against Kim, Neubarth, and Loadholt**

Plaintiff alleges that Kim, Neubarth, and Loadholt were doctors at CSP-Corcoran with whom he had regular appointments.  Plaintiff complains that they acted with deliberate indifference toward his medical needs by refusing to provide Plaintiff with any further treatment, did not have Plaintiff's medical files on hand, and dismissed Plaintiff's pain and suffering as a psychological issue.

While Plaintiff's allegations may be sufficient to support a tort claim for negligence, Plaintiff's allegations do not rise to the level of a constitutional violation under Section 1983 for deliberate indifference toward Plaintiff's medical needs.  Defendants Kim, Neubarth, and Loadholt repeatedly told Plaintiff that they would not provide Plaintiff with any treatment because they had arrived at the conclusion that Plaintiff's pain was psychological and that treatment was not necessary. Plaintiff claims that their conclusion was erroneous because doctors outside the prison concluded otherwise and recommended surgery.

Even if Kim, Neubarth, and Loadholt incorrectly diagnosed Plaintiff's condition, their error does not per se rise to the level of an Eighth Amendment violation.  Plaintiff must proceed further and demonstrate that their actions were the result of their deliberate indifference.  In order to demonstrate that their actions were the result of their deliberate indifference, Plaintiff must allege facts that show that Kim, Neubarth, and Loadholt were actually aware of a serious risk of harm. Plaintiff has alleged that Kim, Neubarth, and Loadholt believed that Plaintiff's pain was purely psychological and no treatment was necessary.  If Kim, Neubarth, and Loadholt actually believed that Plaintiff's pain was purely psychological, they did not act with deliberate indifference even if their belief was erroneous because they were not aware of a serious risk of harm to Plaintiff. Accepting Plaintiff's allegations as true, Kim, Neubarth, and Loadholt did not act with deliberate indifference.

The Court recognizes that Kim, Neubarth, and Loadholt cannot avoid liability under Section

1983 by feigning ignorance of Plaintiff's health problems and fabricating a diagnosis that Plaintiff's pain was purely psychological. However, Plaintiff has not alleged any facts that plausibly challenge their diagnosis. Plaintiff complaint arises chiefly from the fact that doctors outside the prison recommended a wide range of procedures and treatments while doctors inside the prison did not recommend any procedures or treatments for Plaintiff's pain. However, a mere difference of medical opinion between medical providers generally does not amount to deliberate indifference. See Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" Id. (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

Plaintiff has not alleged sufficient facts to plausibly support the conclusion that Kim, Neubarth, and Loadholt's chosen course of treatment was medically unacceptable under the circumstances. It is noteworthy that Plaintiff admits that the surgeries performed by doctors from outside the prison did nothing to help alleviate Plaintiff's pain. Thus, Plaintiff's contention that the prison doctors provided insufficient treatment while the outside doctors provided sufficient treatment is contradicted by the fact that the surgeries recommended by the outside doctors did nothing to alleviate Plaintiff's pain. Plaintiff has not alleged any facts to suggest that Kim, Neubarth, and Loadholt's medical conclusions were erroneous.

Plaintiff has failed to identify anything that Defendants Kim, Neubarth, and Loadholt should have done that would have constituted the medically acceptable course of treatment. At most, Plaintiff has alleged that the outside doctors pursued a more cautious course of treatment by performing surgeries that ultimately proved to be ineffective. While the failure to pursue the more cautious and expensive treatment plan may be grounds for a claim of negligence, it is insufficient to support a claim for deliberate indifference. Plaintiff has failed to allege facts that plausibly support the conclusion that Kim, Neubarth, or Loadholt had actual knowledge that the failure to pursue an alternative course of treatment would pose an excessive risk to Plaintiff's health. Plaintiff has failed to identify what the course of treatment should have been. Plaintiff has not alleged any

facts that support the conclusion that Kim, Neubarth, or Loadholt had an actual subjective awareness that their failure to pursue that course was medically unacceptable under the circumstances and posed an excessive risk to Plaintiff's health.  At most, Plaintiff has identified a difference of opinion between his prison doctors and the outside doctors.  Plaintiff fails to state any cognizable claims against Defendants Kim, Neubarth, or Loadholt.

### 3.    Claims Against Rouch and Salinas

Plaintiff claims that Defendants Rouch and Salinas violated Plaintiff's Eighth Amendment rights by denying, delaying, and "playing games" with Plaintiff's administrative appeals and requests for medical treatment.  However, Plaintiff fails to support his claims with sufficient factual allegations to support the conclusion that Rouch and Salinas acted with deliberate indifference.

It is unclear how Rouch and Salinas acted with deliberate indifference in the manner in which they processed Plaintiff's administrative appeals, particularly in light of the fact that Plaintiff was seen by prison doctors on numerous occasions and was seen by outside doctors on several occasions. In other words, it is unclear how non-medical personnel such as Rouch or Salinas would have known that Plaintiff was receiving deficient medical care when Plaintiff was being seen by medical professionals on a regular basis.

Plaintiff does not specifically identify what facts Rouch and Salinas knew that were ignored. He only vaguely alleges that Rouch and Salinas was made aware of his need for medical treatment through the appeals that Plaintiff filed.  Plaintiff describes one meeting with Defendant Rouch where Rouch interviewed Plaintiff about his health care appeal.  However, Plaintiff's allegations suggest that Rouch was not aware of any excessive risk to Plaintiff's health.  Plaintiff alleges that Rouch told Plaintiff that his requests were already addressed because Plaintiff was seen by a physician.  These allegations do not support the conclusion that Rouch deliberately ignored an excessive risk to Plaintiff's health.  Nothing in Plaintiff's complaint suggests that Rouch's belief that the prison doctors adequately responded to Plaintiff's medical needs constituted deliberate indifference, even if Rouch's confidence in the prison doctors was misplaced.  Moreover, even assuming that Plaintiff's medical treatment was deficient, it is unclear how Rouch or Salinas are liable for the alleged violation of Plaintiff's Eighth Amendment rights.  In sum, Plaintiff fails to state any

cognizable claims against Defendants Rouch or Salinas.

### 4.   Claims Against Does 1-20

Plaintiff attempts to sue "Does 1-20" for the violation of Plaintiff's constitutional rights. Plaintiff's use of the "Doe" moniker is improper.  There are no allegations in Plaintiff's complaint regarding what any "Doe" defendant did or failed to do.  The purpose of suing an entity under a fictitious name such as "Doe" is to allege facts against an individual or entity whose actions are known but whose identity is unknown – not to reserve speculative claims against hypothetical defendants who may or may not exist.  If Plaintiff discovers new claims against additional persons, the proper course of action is to amend his complaint to state claims against these additional persons. Since Plaintiff fails to allege any facts regarding what any Doe defendants did or failed to do, Plaintiff fails to state any claim against any Doe defendants.

### B.   State Law Claims

Plaintiff's remaining claims are state law claims.  Since Plaintiff's complaint fails to state any cognizable federal claims, it is not yet clear whether it is proper for this Court to exercise supplemental jurisdiction over Plaintiff's state law claims.  Therefore, the Court will refrain from screening Plaintiff's state law claims at this time.

### IV.   Conclusion and Order

The Court has screened Plaintiff's complaint and finds that it does not state any claims upon which relief may be granted under Section 1983.  The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the court in this order. See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2007) (recognizing longstanding rule that leave to amend should be granted even if no request to amend was made unless the court determines that the pleading could not possibly be cured by the allegation of other facts); Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) (pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment). Plaintiff is cautioned that he may not add unrelated claims involving different defendants in his amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

If Plaintiff elects to amend, his amended complaint should be brief.  Fed. R. Civ. P. 8(a).

1   Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's

2   constitutional or other federal rights. "The inquiry into causation must be individualized and focus

3   on the duties and responsibilities of each individual defendant whose acts or omissions are alleged

4   to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).

5   With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P.

6   10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a).  In other

7   words, it is not necessary at this stage to submit evidence to prove the allegations in Plaintiff's

8   complaint because at this stage Plaintiff's factual allegations will be accepted as true.

9       However, although Plaintiff's factual allegations will be accepted as true and that "the

10  pleading standard Rule 8 announces does not require 'detailed factual allegations,'" "a complaint

11  must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

12  its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly,

13  550 U.S. 544, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content

14  that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

15  alleged." Id. (citing Twombly, 550 U.S. at 556).

16      Finally, Plaintiff is advised that an amended complaint supercedes the original complaint,

17  Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567

18  (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded

19  pleading," Local Rule 220.  Plaintiff is warned that "[a]ll causes of action alleged in an original

20  complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing

21  London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at

22  1474.  In other words, even the claims that were properly stated in the original complaint must be

23  completely stated again in the amended complaint.

24      Accordingly, based on the foregoing, it is HEREBY ORDERED that:

25      1.      Plaintiff's complaint is dismissed, with leave to amend, for failure to state a claim;

26      2.      The Clerk's Office shall send Plaintiff a complaint form;

27      3.      Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an

28              amended complaint;

14

4.    Plaintiff may not add any new, unrelated claims to this action via his amended complaint and any attempt to do so will result in an order striking the amended complaint; and

5.    If Plaintiff fails to file an amended complaint, the Court will recommend that this action be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

**Dated:**    **October 12, 2010**                    **/s/ Sheila K. Oberto**
                                     UNITED STATES MAGISTRATE JUDGE